Vawter v. Brown.

*Woodfill* v. *The Town of Greensburgh*, 18 Ind. 202. The judgment must be affirmed.

*Per Curiam.*—The judgment is affirmed, with costs.

*Willson & Wallace*, for the appellants.

*J. W. Butler* and *R. C. Gregory*, for the appellee.

---

### VAWTER *v.* BROWN.

The main decision herein rests upon the construction of evidence and can not be briefly stated in a syllabus.

PRACTICE.—After a cause has been appealed to this Court, and the judgment below reversed, and the cause remanded for further trial, it is not error for the lower Court to permit pleadings to be amended.

APPEAL from the *Ripley* Common Pleas.

PERKINS, J.—This cause was before this Court at a former term. 16 Ind. 324.

*Benjamin Vawter* sued *Elijah Brown*, on a note, as follows:

"$200. On or before the 25th day of *December* next, I promise to pay *Daniel M. Kelly* 200 dollars, without relief, &c. *January* 6, 1854. ELIJAH BROWN.

*Kelly* indorsed the note to *Benjamin Vawter*, the plaintiff.

*Brown*, the defendant, answered to the suit that when he gave the note *Kelly* gave him a bond for a deed to a tract of land, which deed was to be executed on payment of the note; that no deed had been tendered, &c.; that *Kelly* did not own the land, and that defendant had been compelled to pay one *Cravens* more than 200 dollars to obtain a deed from him, he being the owner of the land. The plaintiff replied that *Kel-*

*ly,* when he sold the land to *Brown,* held the same only by a title bond from one *Bruden,* to whom there yet remained a sum of purchase money due; that *Bruden* had deeded the land to *James H. Cravens,* and that the defendant, *Brown,* had procured a deed from *Cravens,* by paying him, &c.; when he was entitled to one without paying him, for the same, &c.

There was a trial, and a bill of exceptions contains the evidence.

On the 6th day of *January,* 1859, *Daniel M. Kelly* was in possession of 160 acres of land which he held by virtue of a title bond, from *Richard Bruden,* and on which there was to be paid 600 dollars before *Bruden* could be compelled to make a deed to any one for the land.

*Kelly,* thus holding this 160 acres of land, at the date above named, sold 40 acres of the parcel to *Elijah Brown* for 400 dollars, 200 dollars of which he paid down, and for the remaining 200 he executed the note sued on, and received from *Kelly* a bond for a deed on payment of the note.

. Neither *Kelly* nor any one else tendered to *Brown* assumedly pursuant to the contract in question, a deed for the land before this suit on the note was commenced, nor has one been tendered since; so that unless something has transpired to excuse or equitably amount to performance of this condition precedent, this suit can not be maintained.

*Richard Bruden* executed the bond for the 160 acres to *Daniel M. Kelly* on the 6th day of *August,* 1853, conditioned that *Kelly* should have a deed on payment, &c., on the 25th of *December,* 1862.

On the 21st day of *February,* 1855, *Daniel M. Kelly* assigned this bond from *Bruden* to *Joseph Kelly,* "except the 40 acres which *Elijah Brown* is to have by the payment of 200 dollars and the interest." There is nothing said as to whom he is to make the payment.

On the 28th of *March,* 1855, *John Kelly* assigned the same bond to *James H. Cravens.*

On the 23d day of *April,* 1856, *Bruden* executed a deed for the 160 acres to *Cravens,* and took up his bond.

On the 1st day of *May,* 1856, *Cravens* made a deed to *Brown* for the 40 acres bonded to him by *Daniel M. Kelly,* on the payment by *Brown* to him (*Cravens,*) of 225 dollars.

Thus *Brown* has obtained a deed for the 40 acres which he purchased of *Kelly,* and has paid the full consideration therefor, but he did not get his deed directly from *Kelly,* nor did he pay the consideration to him. Did he receive his deed by *Kelly's* procurement, so that *Kelly* is entitled to say that he made the deed and is entitled to the consideration? Did *Brown* unnecessarily pay *Cravens* to procure his deed? In other words, did *Kelly* procure the deed from *Cravens* to *Brown?* There is no evidence of this fact. It may be true that *Cravens* has made off of some of the parties the 225 dollars paid him by *Brown.* It may be that he was to pay out what was due to *Bruden* and take the 120 acres left after taking out *Brown's* 40 acres, but the evidence does not show it. We are not informed what *James Kelly* paid *Daniel* for the assignment of the bond, nor what *Cravens* paid *James Kelly.*

On the evidence we can not say that *Brown* was not compelled to pay *Cravens* to procure the deed which *Kelly* had bound himself to, but was unable to make.

Another point.

The evidence does not show that *Brown* had come under a binding obligation to *Vawter* to pay the note sued on to him so as to be estopped from setting up the defence made in this case. It is not shown that *Vawter* purchased the note on the faith of a promise on the part of *Brown* to *Vawter* to pay the same to him.

The Court below permitted an amendment to be made, by the defendant, to his answer, after the cause was reversed in

the Supreme Court, and remanded to the Court below. This, it was in the power of the Court to permit. And in the absence of a bill of exceptions, showing the objection urged below, and the ground upon which it was overruled, or that it was overruled arbitrarily and without ground, we must presume it was done upon sufficient ground.

*Per Curiam.*—The judgment below is affirmed, with costs.

*Edwin P. Ferris*, for the appellant.

*H. W. Harrington*, for the appellee.